In the

# United States Court of Appeals

## For the Seventh Circuit

No. 02-2648

MICHAEL WITZKE,

*Plaintiff-Appellant,*

v.

MICHELLE FEMAL, DANIEL BENZER,
JIM WEBB, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 01 C 487—**Lynn Adelman**, *Judge.*

ARGUED JANUARY 9, 2004—DECIDED JULY 22, 2004

Before POSNER, RIPPLE and ROVNER, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Michael Witzke, a prisoner serving a sentence imposed by a Wisconsin state court, filed a pro se complaint under 42 U.S.C. § 1983. He alleged that the defendants had been deliberately indifferent to his medical needs. The defendants moved to dismiss Mr. Witzke's complaint for failure to exhaust administrative remedies, as required by the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(a). The district court granted the motion. For the reasons set forth in the following opinion, we affirm in part,

reverse in part and remand for further proceedings consistent with this opinion.

# I

## BACKGROUND

### A. Facts

In 1996, Michael Witzke pleaded guilty to possession with intent to deliver cocaine and was sentenced to ten years' imprisonment by a Wisconsin court. The sentencing court stayed his prison sentence, and Mr. Witzke was placed on probation for eight years pending his successful completion of probation. When he began his probation, Mr. Witzke was taking prescribed medications to control symptoms of depression and anxiety. Mr. Witzke also had ongoing problems controlling his addiction to drugs and alcohol and had been participating in a methadone treatment program for about twelve years.

During his probationary period, Mr. Witzke violated several conditions of his probation. The first violation occurred on or around September 3, 1999. As a result of this initial violation, Mr. Witzke was held in Outagamie County Jail ("OCJ") from September 3, 1999, until September 10, 1999. Mr. Witzke claims that, during this time, he did not have access to necessary medication. Furthermore, after this violation, his probation agent, defendant Michelle Femal, allegedly ordered Mr. Witzke to "detox from Methadone." R.6, App. 007 at 4.

Mr. Witzke again violated his probation on September 22, 1999, and, consequently, again was confined in OCJ from September 24, 1999, until October 5, 1999. Agent Femal's methadone detoxification order was enforced during this second period of imprisonment.

After his release from OCJ in October 1999, Mr. Witzke was placed, as an alternative to revocation of probation, in the Moorings Program Halfway House ("Moorings") run by defendant Jim Webb. Agent Femal, under the supervision of Agent Daniel Benzer, made the decision to permit Mr. Witzke to participate in the Moorings program as an alternative to the revocation of probation. Mr. Witzke accepted this option, signed a voluntary request for admission to the program and agreed to comply with all of Moorings' rules. The record contains few details of this program. It is apparent that participants in the program are free to leave during the day but must return by an established curfew.

Mr. Witzke's complaint alleges that Mr. Webb was aware that, upon admittance, Mr. Witzke was suffering from methadone withdrawal. Mr. Witzke further alleges that he was subject to cruel and unusual punishment due to the program's failure to address his drug withdrawal needs. Specifically, Mr. Witzke alleges that Mr. Webb, who was not a physician, performed a diagnostic medical evaluation and determined that Mr. Witzke did not need detoxification for methadone. Accordingly, Mr. Webb removed Mr. Witzke from medication necessary to control his depression and anxiety. After ninety days of such deprivation, Mr. Witzke was sent to a psychiatrist who ordered the continuation of the prescribed medicines. Mr. Witzke asserts that Agent Femal and Agent Benzer either knew or should have known that he was denied treatment and should have prescribed medications during his stay at Moorings. Mr. Witzke's complaint reveals that he remained in the Moorings program until March 19, 2000. On that date, Mr. Witzke was arrested for operating a motor vehicle while intoxicated and possessing open intoxicants. Two days later, Mr. Witzke appeared before the court while he was intoxicated. As a result, Mr. Witzke was incarcerated at Waukesha County Jail.

After this series of violations, Mr. Witzke was again offered an alternate to revocation of his probation. Agent Femal recommended placing Mr. Witzke in the Racine Correction Institution ("RCI") Choice Program. This program is an intensive nine-month drug and alcohol program designed to rehabilitate the drug-addicted criminal. After admitting to violations of his probation, Mr. Witzke voluntarily requested admission to this program, his only alternative to revocation of his probation. He agreed to follow the rules of the program. Mr. Witzke alleges that, while participating in the Choice Program, he ran out of his medications and was unable to fill his prescriptions from August 15, 2000, until September 22, 2000, the date of his termination from the program.

Mr. Witzke alleges that, when Agents Femal and Benzer presented the Choice Program as an option, they knew that the program could not address his mental health problems and that he would be denied his prescribed medications. Mr. Witzke further alleges that Gamail Goines, a social worker involved with the Choice Program, allowed Mr. Witzke's medication to "abruptly run out" and did nothing after Mr. Witzke spoke to him about his medications. Appellant's Br. at 7. Mr. Goines terminated Mr. Witzke from the Choice Program in part because he thought Mr. Witzke would use his prescribed medications as "an excuse to not fully participate." *Id.* Mr. Witzke next contends that defendant "Mr. Alvarez,"[1] the Assistant Unit Manager at RCI, "played an administrative and supervisory role in the denial of Witzke's proper medical care." *Id.* Specifically, Mr. Witzke asserts that Mr. Alvarez placed him in a program that was not equipped to deal with his mental health illness

---

[1] Mr. Witzke was unable to determine the full names of two individuals.

and medical conditions. Defendant "Ms. Finley"[2] was a Unit Manager for the Choice Program and was in a supervisory role in the diagnosis and evaluation of Mr. Witzke. Mr. Witzke claims that Ms. Finley refused to allow him to communicate with her about his medical problems.

In sum, Mr. Witzke alleges that he had been denied his prescribed medicine for over a month due to the deliberate indifference of the defendants. He eventually was terminated from the Choice Program and his probation was revoked formally in November 2000. That decision was affirmed in December of 2000. Mr. Witzke was then transferred to the Wisconsin Dodge Correctional Institute.

Mr. Witzke filed his complaint while he was detained in RCI. *See* R.1. He currently is confined at the Waupun Correctional Institution. Mr. Witzke claims deliberate indifference to his medical needs by each defendant and seeks damages and declaratory relief.

## B. District Court Proceedings

The district court granted the defendants' motion to dismiss Mr. Witzke's complaint for failure to state a claim upon which relief could be granted. *See* Fed. R. Civ. P. 12(b)(6). In granting the motion, the district court first considered the Prison Litigation Reform Act of 1995 ("PLRA"), which provides that "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

The district court then noted that the Wisconsin Administrative Code provides probationers a "client complaint

---

[2]  See *supra* note 1.

process" by which they can file a complaint and seek administrative review. R.62 at 5 (citing Wis. Admin. Code § DOC 328.11). The court explained that probationers may use this process to review a decision that personally affects them. The process permits the filing of a complaint with an agent; the decision of that agent can be reviewed by the agent's supervisor. This decision, in turn, can be reviewed by the administrator whose decision is final.

Noting that the harm had occurred when he was a *probationer*, the district court inquired whether the PLRA's exhaustion requirement applied to Mr. Witzke. The court acknowledged that the PLRA concerned actions "with respect to prison conditions" but also noted that the PLRA did not specifically define "prison conditions." The district court then referred to the definitions of a "civil action with respect to prison conditions" and "prison" found in 18 U.S.C. § 3626(g)(2) and (5), respectively, to determine if Mr. Witzke's situation could be included in those definitions. The district court noted that Mr. Witzke was on probation hold or in an alternative to revocation program while at the OCJ, Moorings and the Choice Program. "Thus," the court concluded, Mr. Witzke "was in a state or local facility that detains adults accused of violations of criminal law. When plaintiff's probation was revoked, he was sent to prison." R.62 at 7. The district court determined that, under these conditions, the PLRA's exhaustion requirement applied to Mr. Witzke.

Having concluded that the PLRA applied, the district court noted that the failure to exhaust administrative remedies was an affirmative defense and was not required in a complaint. However, Mr. Witzke had stated that the prison provided grievance procedures, but that he had not taken advantage of those internal procedures. The court therefore held that Mr. Witzke had pleaded himself out of

court and that dismissal for failure to state a claim upon which relief can be granted was appropriate. In taking this action, the court rejected Mr. Witzke's argument that he should not be required to exhaust these remedies because he was "never oriented as a prison inmate" and had no "formal knowledge" of the procedures. R.62 at 9 (quoting Plaintiff's Response to Defendants' Motion to Dismiss).

## II

## DISCUSSION

### A. Standard of Review

We review the district court's grant of a motion to dismiss de novo. *Massey v. Helman*, 196 F.3d 727, 732 (7th Cir. 1999). We accept all well-pleaded allegations as true and shall affirm the dismissal only "if 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Id.* (quoting *Gossmeyer v. McDonald*, 128 F.3d 481, 489 (7th Cir. 1997)). "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10(c). Attachments to the complaint become a part of the complaint, and the court may consider those documents in ruling on a motion to dismiss. *See Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

### B. The Prison Litigation Reform Act

"Ordinarily, plaintiffs pursuing civil rights claims under 42 U.S.C. § 1983 need not exhaust administrative remedies before filing suit in court. "*Porter v. Nussle*, 534 U.S. 516, 523 (2002). However, in 1996, Congress enacted the PLRA, which requires that prisoners exhaust all available remedies

concerning prison conditions prior to bringing a suit under federal law. *See id.* at 523; *Booth v. Churner*, 532 U.S. 731, 739 (2001). In pertinent part, the statute provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

We first must determine whether Mr. Witzke's suit comes within § 1997e(a)'s exhaustion requirement. He submits that the statute prohibits only those suits brought (1) by prisoners confined in any jail, prison or other correctional facility; (2) with respect to prison conditions. He further asserts that his action is not governed by this provision because his claim involves his treatment as a probationer participating in rehabilitation programs.

### 1.

Under the PLRA, a prisoner is defined as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). Whether Mr. Witzke ought to be considered a prisoner under the PLRA is governed by our precedent. In determining whether a plaintiff is a "prisoner confined in jail," we must look to the status of the plaintiff at the time he brings his suit. *See Kerr v. Pucket*, 138 F.3d 321, 323 (7th Cir. 1998); *see also Ahmed v. Dragovich*, 297 F.3d 201, 210 n.10 (3d Cir. 2002); *Harris v. Garner*, 216 F.3d 970, 979-80 (11th Cir. 2000) (en banc); *Page v. Torrey*, 201 F.3d

1136 (9th Cir. 2000); *Greig v. Goord*, 169 F.3d 165 (2d Cir. 1999); *Doe v. Washington Co.*, 150 F.3d 920 (8th Cir. 1998). Mr. Witzke's probation was revoked formally in December of 2000[3] for violating its terms and conditions. Mr. Witzke filed his complaint on May 15, 2001. At that time, Mr. Witzke was a prisoner incarcerated at the RCI.[4] Consequently, the district court properly considered Mr. Witzke a "prisoner confined in any jail, prison, or other correctional facility" as defined by the PLRA.

This focus on the status of the plaintiff at the time of the filing of the action is compatible with the purpose of the PLRA. We previously have explained that prisoners encounter a uniquely low opportunity cost relative to the typical litigant. *See Kerr*, 138 F.3d at 323. Prisoners often have an abundance of time, while facing a restricted number of enjoyable activities with which to pass the time other than filing federal suits. "Opportunity costs of litigation rise following release, diminishing the need for special precautions against weak suits." *Id.*

---

[3] Mr. Witzke states that his probation was revoked formally on November 28, 2000, *see* Appellant's Br. at 8, but the actual revocation order states that his probation was revoked effective December 20, 2000. This difference in date in no way alters the disposition of the case.

[4] Mr. Witzke concedes that "he is currently a prisoner within the meaning of § 1997e(h)." Appellant's Br. at 11 n.7 (brief of appointed counsel). Further, the RCI qualifies as a prison under the statute. A prison is defined in 18 U.S.C. § 3626(g)(5) as "any Federal, State, or local facility that incarcerates or detains juveniles or adults accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law."

**2.**

Mr. Witzke contends that he is not complaining of *prison* conditions. Rather, he maintains that the alleged events took place while he was a probationer participating in probationary programs; therefore, he continues, he is not complaining about *prison* conditions but about his treatment while he was a probationer. Such allegations are, in his view, pre-incarceration claims.

Section 1997e does not delineate what qualifies as a prison condition. Accordingly, we have looked to another section of the PLRA, which defines a similar term. *See Smith v. Zachary*, 255 F.3d 446, 448-49 (7th Cir. 2001). Section 3626(g)(2) defines "civil action with respect to prison conditions" as "any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison." 18 U.S.C. § 3626 (g)(2). In considering this term from another section of the code, we have noted that

> both [statutes] are part of the same legislation with the same overreaching objectives—to enable prison officials to resolve complaints internally and to limit judicial intervention in the management of state and federal prisons. Thus, it makes good sense to assume that the definition provided by Congress in one statute applies to another related statute.

*Smith*, 255 F.3d at 449.

In defining the term "prison conditions" as employed in the PLRA, the judicial focus up to now has been, understandably, on other interpretative problems. For instance, there was a great deal of litigation on whether an action

based on a single occurrence of violence or excessive force could be classified as an action with respect to "prison conditions."[5] The Supreme Court eventually resolved this issue in *Porter v. Nussle*, 534 U.S. 516 (2002), by holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532. It is now clear that even an action based on a single event can be considered an action with respect to prison conditions.

More relevant to the present situation, it also is clear, that "complaints about medical treatment in prison are complaints about 'prison conditions.'" *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 534 (7th Cir. 1999);[6] *see also Wilson v. Seiter*, 501 U.S. 294, 299 n.1 (1991) (noting that "if an individual prisoner is deprived of needed medical treatment, that is a condition of *his* confinement, whether or not the deprivation is inflicted upon everyone else"); *Christina A. ex rel. Jennifer A. v. Bloomberg*, 315 F.3d 990 (8th Cir. 2003) (noting that the physical conditions of the environment and the nature of services provided to prisoners concerned "conditions of confinement"); *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d

---

[5] *See Larkin v. Galloway*, 266 F.3d 718, 722-23 (7th Cir. 2001); *Smith v. Zachary*, 255 F.3d 446, 448-49 (7th Cir. 2001); *Lawrence v. Goord*, 238 F.3d 182, 185-86 (2d Cir. 2001), *vacated by* 535 U.S. 901 (2002); *Booth v. Churner*, 206 F.3d 289, 294-96 (3d Cir. 2000), *aff'd*, 532 U.S. 731, 739 (2001); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).

[6] In *Perez* we dealt with the typical situation where a prisoner brought claims about treatment received during the time he had been incarcerated in prison. However, Mr. Witzke is complaining about medical treatment he received in a prison facility, a halfway house and other conditions while he was on *probation*.

Cir. 1999) ("[The term 'conditions of confinement'] quite simply encompasses all conditions under which a prisoner is confined for his term of imprisonment. These include terms of disciplinary or administrative segregation such as keeplock or solitary confinement, as well as more general conditions affecting a prisoner's quality of life such as: the revocation of telephone or mail privileges . . . and the deprivation of exercise, medical care, adequate food and shelter, and other conditions that, if improperly imposed, could violate the Constitution."); *Harris v. New York City Dep't of Corr.*, No. 00 CIV. 7164 (NRB), 2001 WL 845448, at *2 (S.D.N.Y., July 25, 2001) ("[A] consensus has clearly developed that an action alleging deliberate indifference to medical needs is an action 'with respect to prison conditions' that therefore requires administrative exhaustion under § 1997e(a).").

With regard to the precise interpretive task before us, the obvious limit to the plain wording of the term "prison conditions" is that only complaints relating to conditions within a prison or correctional facility are subject to the exhaustion requirements. Conditions unrelated to that situation cannot be said to be about prison conditions: Only complaints about the "conditions of confinement," 18 U.S.C. § 3626, in "any jail, prison, or other correctional facility," 42 U.S.C. § 1997e(a), can be characterized properly as involving "prison conditions." *See* 18 U.S.C. § 3626(g)(2) (defining a "civil action with respect to prison conditions" as "any civil proceeding . . . with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison"); *Porter*, 534 U.S. at 532 ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life . . . .").

Starting from this basic limitation, we must make two further assessments: (1) whether Mr. Witzke was confined,

and (2) whether his confinement was in "any jail, prison, or other correctional facility." 42 U.S.C. § 1997e(a). Specifically, to assess whether the conditions are *prison* conditions, we must determine whether Mr. Witzke was "confined" in the Choice Program at RCI and the Moorings program and whether these facilities fit within the meaning of "any jail, prison, or other correctional facility."

We believe that the restrictions imposed by the Moorings and Choice Programs sufficiently restricted Mr. Witzke to fit comfortably within the broad term, "confinement," as employed in the PLRA. He entered each program only after admitting to a violation of his probation, an admission that could have led to a revocation of his probation. Mr. Witzke was required to enter the facilities and to abide by their restrictive rules. The Choice and Moorings programs imposed even more restrictions than the ordinary travel and job restrictions that typically accompany probation. He not only had to attend the programs but had to reside at each facility. For example, in the Choice Program, Mr. Witzke was confined in a cell with another "inmate" during his participation there. Mr. Witzke actually received sentence credit for his "confinement" in the Choice Program. With regard to the Moorings program, the record indicates that Mr. Witzke could leave the premises only during the day but was required to reside inside the Moorings facilities at night when they would lock the doors. Accordingly, Mr. Witzke was confined during the time he was required to attend the intensive rehabilitation program at the RCI and Moorings. In the ordinary meaning of the term, Mr. Witzke was confined during the time he was required to attend each program.

We now turn to the second part of our inquiry, whether the facilities fit within the definition of "any jail, prison, or other correctional facility." 42 U.S.C. § 1997e(a). The PLRA does not define "any jail, prison, or other correctional

facility," but " '[j]ail' is commonly defined as a 'place for the lawful confinement of persons' or a 'prison.' " *Alexander S. v. Boyd*, 113 F.3d 1373, 1383 (4th Cir. 1997) (quoting Webster's II New Riverside Dictionary 650 (1988)). "Prison" is defined as "any Federal, State, or local facility that incarcerates or detains juveniles or adults accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law." 18 U.S.C. § 3626(g)(5). Our colleagues in the Fourth Circuit have noted that a " '[c]orrectional institution' is a 'generic term describing prisons, jails, reformatories, and other places of correction and detention.' " *Id.* (quoting Black's Law Dictionary 344 (6th ed. 1990)). Finally, we point out that, in defining these terms, Congress did not specify a narrow list of institutions, but rather employed multiple generic terms to describe the institutions covered. Indeed, Congress made this phrase even broader when it chose the expansive word "any" to precede the list. *See United States v. Gonzales*, 520 U.S. 1, 5 (1997).

Applying these terms to the Choice Program, it is evident that the RCI is a facility that detains people convicted of violations of criminal law. Neither party disputes that the RCI is a prison and incarcerates those convicted of violations of criminal law. The Choice Program was located in a correctional facility, and Mr. Witzke was confined there due to the conditions of his probation. Accordingly, Mr. Witzke was subject to § 1997e(a)'s exhaustion requirement for injuries that he claims occurred during the time he was in the Choice Program.

We turn now to the Moorings Halfway House program. In our view, this facility also comes within the definition of "any jail, prison, or other correctional facility." Although the record provides little detail about the Moorings program, we can ascertain that Moorings provides drug and alcohol treatment programs and housing for some attendees. We

must read a statute to give effect to each word so as to avoid rendering any words meaningless, redundant, or superfluous. *See In re Merchants Grain, Inc.,* 93 F.3d 1347, 1353-54 (7th Cir. 1996). Restricting the PLRA's application to persons confined in jail or prison would render the term "other correctional facility" superfluous. An intensive drug rehabilitation halfway house certainly is the type of reformatory or "other correctional facility" that was intended by that term. A contrary reading would render the term only surplusage.

Applying the PLRA to Mr. Witzke for injuries while he was in these facilities gives effect to the manifest intent of the PLRA. The PLRA was enacted not only to limit frivolous suits but also to permit the correctional facilities to address the problem before responding to litigation. *See Porter,* 534 U.S. at 525 ("Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."). Congress' choice of broad language makes clear that it intended that a wide variety of institutions be afforded the opportunity to address the problems presented in inmate complaints before the initiation of a federal lawsuit. The fact that the plaintiff is confined in the program as a probationer does not render an initial review by correctional officials any less valuable for correcting potential problems in a facility. Similarly, the fact that the injuries occurred while the plaintiff was a probationer does not make the development of an internal record any less helpful in filtering out frivolous claims. Moreover, requiring such exhaustion to probationers works no inequity on the probationers.

### 3.

Mr. Witzke next claims that the only administrative remedies potentially available while he was a probationer

were the Wisconsin probation department's "client complaint process." *See* Wis. Admin. Code § DOC 328.11. He further contends that when his probation was revoked he became a prisoner and lost the right to use any remedies provided to probationers.

The district court deemed fatal Mr. Witzke's admission that a grievance procedure existed and that he had not filed a grievance. The court noted that Mr. Witzke had admitted that the prison grievance process "may have been a possible remedy in restraining defendants from further acts of indifference." R.62 at 9 (quoting Plaintiff's Response to Defendant's Motion to Dismiss at 2 ¶ 2). It further noted that he also had said that he was discouraged from making complaints and that he had no "formal knowledge" of the complaint process. *Id.*

This single statement by a pro se plaintiff cannot, in the context before us, be characterized as an admission sufficient to justify dismissal. Although Mr. Witzke did admit that there was a prison grievance procedure and that there "may have been a possible remedy," Mr. Witzke also stated that "he exhausted the *only* administrative remedies that were *available* to him as a probationer sent into a prison setting" as an alternative to revocation of his probation. R.47 at 2. He explained that "[a]s an ATR [Alternative to Revocation of probation] participant the prison grievance process was not available to him . . . because he was not actually a prisoner, but doing a program in a prison setting." R.52 at 1.

Under these circumstances, instead of dismissing the complaint at this early stage, the better course would have been for the trial court to give the pro se litigant a more complete opportunity to demonstrate whether any administrative remedy was available. *See Kincaid v. Vail*, 969 F.2d 594, 598 (7th Cir. 1992) ("Allegations in pro se pleadings are

to be construed liberally, applying substantially less strin-
gent standards than those applied to pleadings drafted by
professional counsel."). This issue is best addressed in the
first instance by the district court.

## Conclusion

   For the foregoing reasons, the judgment of the district
court is affirmed in part, reversed in part and remanded.
Mr. Witzke may recover his costs in this court.

AFFIRMED in part; REVERSED
and REMANDED in part

A true Copy:

        Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*