425 F.3d 177
 Michael BRAHAM, Plaintiff-Appellant,
v.
CLANCY, C/O, I/O; John Doe, Medic, I/O, Defendants,
John J. Armstrong, Comm, I/O, Lantz, Warden, I/O, Nmi Bates, I/O, Brostek, C/O, I/O, Bellaro, C/O, I/O, Barbour, Lt, I/O Defendants-Appellees.
 Docket No. 03-0153.
 United States Court of Appeals, Second Circuit.
 Submitted: February 2, 2005.
 Decided: September 29, 2005.
 
 Michael Braham, Cheshire Correctional Institute, Cheshire, CT, Pro se.
 Madeline A. Melchionne, Assistant Attorney General, Hartford, CT, for Richard Blumenthal, Attorney General of Connecticut, for Defendants-Appellees.
 Before: POOLER, B.D. PARKER, Circuit Judges, and CASTEL, District Judge.*
 B.D. PARKER, Circuit Judge.
 
 
 1
 Michael Braham, pro se and incarcerated, appeals the dismissal by the United States District Court for the District of Connecticut (Smith, M.J.) of claims against several officials[1] of the Corrigan Correctional Facility. Braham alleged that a former cellmate had threatened and then assaulted him, and that prison officials, who were aware of the danger, failed to respond to his request for a cell change. Specifically, Braham claimed that the officials' failure to protect him and indifference to his complaints violated the Eighth Amendment. He requested a declaratory judgment, along with compensatory and punitive damages. See 42 U.S.C. § 1983.
 
 
 2
 The District Court granted summary judgment on the ground that Braham failed to exhaust administrative remedies as required by the Prisoner Litigation Reform Act ("PLRA" or "the Act"). See 42 U.S.C. § 1997e(a). On appeal, Braham contends that appropriate remedies were unavailable because prison officials had failed to respond to a series of inmate request forms he filed as part of the prison's informal grievance process. Alternatively, he contends that exhaustion should be excused because, after he was assaulted, he received the relief he had sought — transfer to another cell. Finally, Braham contends that, even if additional administrative remedies were available, he exhausted them by notifying the warden in writing and by raising his claim during the prison's disciplinary appeals process.
 
 
 3
 Because summary judgment was granted prior to our recent decisions in a series of cases addressing the PLRA's exhaustion requirements, we vacate the judgment and remand to the District Court to consider whether the plaintiff provided prison officials with sufficient information to permit them to take appropriate remedial measures in response to his grievance, thereby satisfying the Act's exhaustion requirement.
 
 BACKGROUND
 
 4
 Except as otherwise noted, the facts are undisputed. Braham believed that prison officials had been unresponsive to his request for a cell change after he notified them that, between August and October 1999, his then cellmate, Edward Burgos, had threatened him with bodily harm. Braham claims that he wrote to a Lieutenant Bates reporting these threats and requesting a cell change, but Bates did not respond in a timely fashion. When he did respond, Bates claimed to no longer be in charge of cell changes, and did not forward the request to the appropriate prison officials. Braham then sent another written request for a cell change to an Officer Bellaro, informing Bellaro that Braham and his cellmate were experiencing conflict. Braham also contends that he expressed his concerns to Bellaro in person, but Bellaro again failed to take them seriously.
 
 
 5
 On October 4, Braham told an Officer Brostek that "he and his cellmate were not getting along and that he wanted to be moved before the situation became violent." Brostek denied this request, explaining to Braham that "he would not make a cell change unless there was a fight in the cell." Later that day, Braham told Lieutenant Barbour that he had made numerous requests for a cell change, and that his dispute with Burgos was escalating. Barbour also declined the request, informing Braham that he was not authorized to change Braham's cell.
 
 
 6
 On the evening of October 4, Burgos assaulted Braham, causing abrasions and lacerations to his face and head that required sutures. Although Burgos was the one who assaulted Braham, Braham was charged with, and found guilty of, a disciplinary infraction, and was segregated for fifteen days.
 
 
 7
 Magistrate Judge Thomas P. Smith presided over the case upon consent of the parties, and granted summary judgment to Defendants. In their motion for summary judgment, Defendants essentially contended that Braham had failed to exhaust his administrative remedies. In support of their motion, Defendants submitted an affidavit from Michael Lewis, Corrigan's Grievance Coordinator, explaining its grievance procedures. Lewis explained that the Connecticut Department of Corrections' Administrative Directive 9.6 ("the Directive" or "Directive 9.6") requires prisoners to attempt to resolve problems through an inmate request system prior to filing a grievance. Under the Directive, grievable matters include "[i]ndividual ... inmate actions" and any matter relating to "conditions of care or supervision and living unit conditions." The Directive provides that meritorious grievances "shall be given an appropriate and meaningful remedy," such as corrective action, and change, enforcement, or development of internal policies. While a grievance could be rejected for failure to seek informal resolution via submission of an Inmate Request Form, the Inmate Request Form requirement could "be waived for an emergency grievance," which is appropriate for resolution of "an issue which presents... a threat of death or injury." After utilizing the informal inmate request system, inmates who still wish to file grievances are required to do so within 30 days of the event at issue.
 
 
 8
 Corrigan's grievance process consists of three levels. First, the grieving prisoner receives a Level 1 Review by the Facility Administrator, Community Services Unit or ranking facility Health Service Administrator/Supervisor within 30 days of filing his grievance, and is given directions for appealing to Level 2. Next, the prisoner can seek a Level 2 Review by the Director of the Region, Director of Community Services or Regional Health Service Administrator within 25 days of receiving a Level 1 response. Finally, if the prisoner's appeal at Level 2 is unsuccessful, he can seek a Level 3 review by the Commissioner for the Department of Corrections within 5 days. Lewis testified that Corrigan's records indicate that Braham had not filed a grievance relating to the October 4 assault or to his requests for a transfer or a change of cellmates.
 
 
 9
 Based on a perceived failure to follow these procedures, the Defendants argued that Braham had not complied with the exhaustion requirements of the PLRA. See 42 U.S.C. § 1997e(a). Specifically, they contended that because Braham never filed a grievance relating to his cellmate's conduct, he was precluded from filing a Section 1983 claim related to his assault. They also contended that exhaustion was required regardless of whether the precise relief sought by Braham was available or whether it was futile as a consequence of the changes in bunking arrangements following the assault, and that informal letters and requests were insufficient substitutes for exhaustion. Finally, the Defendants contended that although Braham's cell change had already taken place, exhaustion would have allowed the facility to review its policies and procedures relating to such complaints in accordance with the Directive.
 
 
 10
 In opposition to summary judgment, Braham admitted that he had not filed a grievance relating to the Burgos attack but argued that he had initiated the informal inmate request process required by the Directive. Pointing out that the attack occurred before the grievance filing deadline (30 days after denial of an inmate request), Braham argued that because he was transferred to a different cell after the attack, he "no longer had a viable grievance that could be filed or acted upon." In further opposition to the motion, Braham submitted several documents including his correspondence with prison officials, in which he had alerted them to the volatile situation he confronted.[1] In an inmate request form, dated September 3, Braham requested a cell change because he could no longer live with Burgos as a consequence of his threats. On September 23, Braham filed another request form, complaining that his first request, which he had given to Lieutenant Bates, had not been answered. Braham reported that he and Burgos had reached a resolution under which the two would trade cells with another inmate, and he requested that the officials expedite this move because Braham found the situation "extremely stressful." In an undated response, Officer Bellaro denied the need for a cell change. Finally, on September 29, Braham filed an inmate request form again requesting a cell change. In that request, Braham proposed a "worker" inmate as a potential cellmate because Bellaro said that he "would only put 2 workers together." Braham stated that he had "tried everything with my celly but he is immature and nothing works."
 
 
 11
 The Court concluded that Braham had failed to file a formal grievance over the denial of his cell change and for the October 4 assault. The Court reasoned that it was "of no consequence that the plaintiff filed several inmate request forms prior to the assault," as he "offered no evidence or legal analysis that supports his position that he was relieved of [sic] following the grievance procedures of Directive 9.6." The Court also noted that exhaustion is "required regardless of whether the precise relief desired by the plaintiff is available in the administrative context, or whether participation in the administrative process might, for some other reason, be deemed futile." Because Braham did not "tak[e] the grievance process to its final stage prior to filing this action," but rather "chose ... to terminate his efforts when he decided that they would be futile," the Court held that Braham had failed to exhaust his administrative remedies, and on this ground granted summary judgment. Braham appeals.
 
 DISCUSSION
 
 12
 We review an order granting summary judgment de novo, asking whether the district court properly concluded that there were no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. See Feingold v. New York, 366 F.3d 138, 148 (2d Cir.2004). In determining whether there are genuine issues of material fact, we "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Id. (internal quotation omitted).
 
 
 13
 The PLRA provides that a prisoner may not proceed under Section 1983 "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that the exhaustion requirement of the PLRA "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).
 
 
 14
 While this case was on appeal, we issued a series of opinions addressing the PLRA's exhaustion requirement. See Abney v. McGinnis, 380 F.3d 663 (2d Cir.2004); Giano v. Goord, 380 F.3d 670 (2d Cir.2004); Hemphill v. New York, 380 F.3d 680 (2d Cir.2004); Johnson v. Testman, 380 F.3d 691 (2d Cir.2004); Ortiz v. McBride, 380 F.3d 649 (2d Cir.2004). In Hemphill, we articulated a three-part framework for analyzing contentions that an inmate failed to exhaust administrative remedies. See 380 F.3d at 686. First, "[d]epending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether administrative remedies were in fact `available' to the prisoner." Id. (citing Abney, 380 F.3d 663). Second, the court should "inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise it or preserve it," id. (citing Johnson, 380 F.3d 691), "or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense," id. (citing Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir.2004)). Third, "the court should consider whether `special circumstances' have been plausibly alleged that justify `the prisoner's failure to comply with the administrative procedural requirements.'" Id. (quoting Giano, 380 F.3d at 675-76).
 
 
 15
 Because the District Court ruled on defendants' summary judgment motion prior to our decisions in Hemphill and the related exhaustion cases, several questions as to PLRA exhaustion remain unresolved. In particular, on remand, the District Court should determine whether "special circumstances" justified Braham's failure to comply with the Connecticut Department of Corrections' administrative procedural requirements for filing a grievance. Hemphill, 380 F.3d at 686. To begin, we consider Braham's argument that administrative remedies were unavailable after he was attacked by Burgos. Braham contends that once the attack occurred, he was permanently separated from Burgos, thereby obtaining all the relief he had requested. The corrections officials point to additional appropriate remedies such as changes to prison policies relating to inmate cell change requests, or the retraining, reassignment or dismissal of corrections officers. They argue that the fact that Braham asked only that he be assigned a new cellmate, and did not request that the prison change its policies or take administrative action against any corrections officers, is irrelevant to the question of the availability of administrative remedies. (Appellees' Br. 14).
 
 
 16
 In determining the availability of administrative remedies, the District Court correctly followed Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). See Braham v. Armstrong, No. 3:00CV261, slip. op. at 7 (D.Conn. Apr. 24, 2003). In Booth, the Supreme Court held that failure to exhaust administrative remedies was not justified by the fact that the monetary damages sought by the inmate could not have been provided by the grievance procedure. 532 U.S. at 735, 121 S.Ct. 1819. The Court reasoned that where an official "has authority to take some action in response to [the] complaint, but not the remedial action [the] inmate demand[ed] to the exclusion of all other forms of redress," an administrative remedy is still deemed to be available. Id. at 736, 741, 121 S.Ct. 1819. Thus, "an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." Id. at 741 n. 6, 121 S.Ct. 1819. See also Abney, 380 F.3d at 667 (quoting Booth, 532 U.S. at 738-39, 121 S.Ct. 1819) (observing that to determine whether or not a remedy affords "`the possibility of some relief for the action complained of,'" we look to "the procedural means, not the particular relief ordered," because the PLRA's exhaustion requirement refers to "`processes, not forms of relief'"). The Court also noted that futility does not excuse a failure to exhaust administrative remedies. Booth, 532 U.S. at 741 n. 6, 121 S.Ct. 1819
 
 
 17
 Although Abney identified a caveat to Booth, that exception does not apply here. In Abney, we held that where a disposition of a grievance provided the relief requested but was never implemented, an exhaustion requirement may be excused because "no further administrative proceedings were available" to the inmate. See Abney, 380 F.3d at 669 (quoting Booth, 532 U.S. at 738, 121 S.Ct. 1819). In other words, the inmate had no "possibility of some relief" because his grievance resulted in a disposition in his favor, albeit one which was never implemented. It was reasonable for the inmate to conclude that his administrative remedies had been exhausted by the positive disposition. The fact that it was not implemented did not amount to a failure to exhaust administrative remedies. Thus, Abney is inapposite, and Booth applies.
 
 
 18
 Braham did not attempt to file a formal grievance complaining that prison officials had failed to protect him from Burgos. Here, as in Booth, had he done so, prison authorities could have taken some action. For example, they could have pursued the remedial measures authorized by Directive 9.6, including "[d]evelop[ing] ... policies and procedures pertaining to the grievance" or disciplining the relevant officers. While the grievance could not have resulted in money damages, other redress was available. We disagree with Braham's contention that, after the cell change, the possibility of relief no longer existed. See Booth, 532 U.S. at 738-39, 121 S.Ct. 1819.
 
 
 19
 Although we agree with the District Court's conclusion that remedies were available, our decision in Johnson nonetheless requires that we remand for consideration of whether Braham's filing of three inmate request forms, his complaint about the prison officials' unresponsiveness to these forms during his disciplinary appeal, or some combination of the two, provided sufficient notice to the prison officials "to allow [them] to take appropriate responsive measures," thereby satisfying the exhaustion of administrative remedies requirement, Johnson, 380 F.3d at 697.
 
 
 20
 In Johnson, a federal prisoner alleged violation of the Eighth Amendment in connection with an attack by another inmate. 380 F.3d at 692-93, 698 n. 6. Rather than bringing a grievance in accordance with the Bureau of Prisons's procedure, the prisoner, when he was disciplined by the institution, filed a complaint against a corrections officer and renewed the complaint on appeal from his disciplinary conviction. Id. at 692-94. When Johnson sued under 42 U.S.C. § 1983, the lower court dismissed the complaint for failure to exhaust administrative remedies. Id. at 695. On appeal, we noted that "[t]he PLRA's exhaustion requirement is designed to `afford [ ] corrections officials time and [sic] opportunity to address complaints internally before allowing the initiation of a federal case'" and that "[u]ncounselled inmates navigating prison administrative procedures without assistance cannot be expected to satisfy a standard more stringent than that of notice pleading." Id. at 697 (quoting Porter, 534 U.S. at 524-25, 122 S.Ct. 983). We explained that "[w]hether or not Johnson's disciplinary appeals [sic] was enough to `alert [ ] the prison to the nature of the wrong for which redress is sought' ... is not manifestly obvious." Id. (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir.2002)). See also Giano, 380 F.3d at 676 (concluding that "the plaintiff reasonably interpreted DOCS regulations to mean that his only administrative recourse was to appeal his disciplinary conviction"). Accordingly, we remanded for further consideration. See Johnson, 380 F.3d at 697-98.
 
 
 21
 Here, there is a question as to whether Braham's filing of three requests for a cell change, his complaint about the prison officials' unresponsiveness to these requests during his disciplinary appeal, or some combination of the two, was "enough to put prison officials on notice of [Braham's] concerns about [the prison officials'] role in [the] assault." Id. at 696. On remand, the issue should be explored since Braham appears to have a colorable argument that, at the time of the Burgos attack, he was attempting to follow prison regulations with respect to exhaustion. Prison officials, during the one-month period prior to the assault when Braham was sending them inmate request forms, may have had sufficient notice of Braham's concerns to have been able to deal with them administratively. Moreover, it appears that Braham may have brought up the prison officials' unresponsiveness to his request forms during his disciplinary appeal process. Id. at 697. Since it is "not manifestly obvious" to us whether Braham's participation in the disciplinary appeal process was enough to alert the prison officials as to "the nature of the wrong for which redress is sought," id. (quoting Strong, 297 F.3d at 650), the District Court may wish to consider on remand whether the content of Braham's submissions in the disciplinary appeal process was sufficient to put prison officials on notice of his concerns.
 
 
 22
 In support of Braham's argument that the appeal of his disciplinary conviction exhausted his administrative remedies, he included in an appendix to his reply brief in this Court certain documents pertaining to his disciplinary appeal, some of which are not part of the record on appeal. For example, in his inmate interview, taken after the fight with Burgos, Braham reported that he "expressed [his] concerns" about Burgos "to various staff members and no one did anything about it." A disciplinary investigation report recommending a finding of guilty was filed on October 13, and in a disciplinary hearing the next day, Braham was found guilty of fighting. He appealed, and on October 25, the Warden affirmed the finding of the disciplinary hearing. In addition, on the day the disciplinary hearing appeal was decided, Braham wrote Warden Theresa Lantz a letter (a copy of which was also addressed to Commissioner John J. Armstrong) extensively detailing his safety concerns and his unsuccessful attempts to address them with the prison staff. As a general matter, we will not consider material not included in the record on appeal. Loria v. Gorman, 306 F.3d 1271, 1280 n. 2 (2d Cir.2002). However, because Hemphill and the related cases were decided after the District Court's decision, and the additional documents included in the appendix may be relevant to Braham's pro se claim, it may be appropriate for the District Court to consider these documents on remand. The District Court may also wish to consider whether the fact that Braham received the cell change that he had requested in his inmate requests constituted the type of "special circumstance" that "might lead [an] uncounseled prisoner[ ]," Giano, 380 F.3d at 678, to reasonably conclude that he had prevailed in the grievance process and thus to forego further grievances.
 
 CONCLUSION
 
 23
 We vacate the judgment of the District Court and remand for further proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 *
 The Honorable P. Kevin Castel, United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 The named defendants are Commissioner John J. Armstrong, Warden Theresa C. Lantz, Lieutenants Bates and Barbour, Correctional Officers Bellaro and Brostek, "John/Jane Doe Commissary Supervisor" and "John/Jane Doe Commissary Operator[s] # 1 [and] # 2."
 
 
 [1]
 There is a dispute as to the number of inmate requests filed. Plaintiff claims to have filed three inmate requests on September 3, September 23, and September 29 of 1999. The Defendants claim that they received only the September 23 request, which was denied. The District Court concluded that three inmate requests had been filed