**Frank RUGGIERO, Plaintiff–Appellant,**

v.

**COUNTY OF ORANGE, H. Frank Bigger, in his official and individual capacities, Lieutenant Williams, Sergeant Weed, in their official and individual capacities, Sergeant Carreri, in his official and individual capacities, Officer Losavio, in his official and individual capacities, Defendants–Appellees.**

**Docket No. 05–4774–cv.**

United States Court of Appeals, Second Circuit.

Argued: April 26, 2006.

Decided: Oct. 18, 2006.

Christopher D. Watkins, Thornton, Bergstein & Ullrich, LLP (Stephen Bergstein, on the brief), Chester, NY, for Plaintiff–Appellant.

Hyun Chin Kim, Assistant County Attorney (David L. Darwin, County Attorney, on the brief), Goshen, NY, for the County of Orange and Defendants in their Official Capacities.

Ralph Puglielle, Drake, Sommers, Loeb, Tarshis, Catania, Liberth, Mahon & Milligram PLLC, (Stephen J. Gaba, on the brief), Newburgh, NY, for Defendants in their Individual Capacities.

Before KEARSE, WALKER and SACK, Circuit Judges.

JOHN M. WALKER, JR., Circuit Judge.

Frank Ruggiero alleges that he was subjected to excessive force by corrections officers on multiple occasions during his incarceration at Orange County Correctional Facility ("OCCF"). He did not file a formal grievance as to any of these incidents. Ruggiero filed this 42 U.S.C. § 1983 action alleging constitutional violations while he was confined at the Willard Drug Treatment Campus ("Willard") for violating his parole. The United States District Court for the Southern District of New York (Stephen C. Robinson, *Judge*) granted Defendants–Appellants' motion for summary judgment on the basis that Ruggiero had failed to exhaust available administrative remedies as required by the Prison Litigation Reform Act, Pub.L. No. 104–134, 110 Stat. 1321 (1996) ("PLRA" or "the Act"). Ruggiero argues on appeal that this requirement did not 3 apply to him because, when he filed his complaint, he was not a prisoner in "any jail, prison, or other correctional facility." 42 U.S.C. § 1997e(a). Ruggiero argues further that, even if he was required to exhaust, his failure to do so is excused because (1) he reported his mistreatment during an interview with investigators looking into an assault on another inmate and (2) he was not provided in a timely fashion with the inmate handbook that explains the grievance procedures at OCCF.

## BACKGROUND

Ruggiero describes several incidents in which he says correctional officers at OCCF employed excessive force against him between June 2000 and May 2001. At a point soon after the June 2000 incident, he hired counsel to represent him.

In the course of investigating an August 2000 incident involving an altercation between Ruggiero and another inmate, officers from the Sheriff's Department interviewed Ruggiero in September 2000. Ruggiero told these officers about some of the mistreatment he complains about in this case, and the officers asked him if he would like to be placed in protective custody. Ruggiero tentatively declined the offer, informing the officers that he wanted to consult his attorney before deciding.

After talking to his attorney, Ruggiero accepted the officers' offer to transfer him to another part of OCCF. Instead of a transfer within OCCF, Ruggiero was transferred to Riker's Island. He unsuccessfully opposed this transfer by seeking an injunction against the transfer in state court, alleging that the transfer was a retaliatory act for his complaints about mistreatment to the investigators. Ruggiero alleges that, upon his return to OCCF about a month later, he was subjected to further harassment, threats, and mistreatment.

There is no dispute that, at all relevant times, there was an inmate grievance procedure in place at OCCF and that Ruggiero never filed a grievance related to any of the mistreatment of which he complains. The inmate grievance procedure is contained in the inmate handbook that is provided to each inmate upon arrival at OCCF. Despite signing a form indicating his receipt of an inmate handbook on five separate occasions from August 1997 until October 1999, Ruggiero claims that he was not provided with a copy of the handbook until March 2001.

In May 2001, Ruggiero was released on parole from OCCF, but in October, he violated his parole and was confined to Willard, a secure drug treatment facility, where he remained until March 2003. While at Willard, Ruggiero filed the complaint in this suit.

The district court granted summary judgment to Defendants–Appellees based on Ruggiero's failure to exhaust his administrative remedies as required by the PLRA. *Ruggiero v. County of Orange*, 386 F.Supp.2d 434, 437 (S.D.N.Y.2005). This appeal followed.

## DISCUSSION

We review a district court's grant of summary judgment *de novo, Anderson v.* *Recore*, 446 F.3d 324, 328 (2d Cir.2006), affirming when, construing all evidence in the light most favorable to the non-moving party, *id.*, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law," Fed.R.Civ.P. 56(c).

In 1996, as part of the PLRA, Congress enacted a provision intended to "invigorate[ ] the exhaustion prescription" for prisoners. *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Section 803 of the PLRA, 42 U.S.C. § 1997e(a), provides that

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

This exhaustion requirement applies to excessive-force claims such as Ruggiero's as well as other complaints about general conditions of prison life. *Porter*, 534 U.S. at 532, 122 S.Ct. 983. At the time of the alleged abuses claimed by Ruggiero, this circuit did not require exhaustion of claims related to single instances of mistreatment. *Nussle v. Willette*, 224 F.3d 95 (2d Cir.2000), *rev'd, Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12. But in February 2002 *Porter* made it clear that claims such as Ruggiero's were subject to the exhaustion requirement. Ruggiero's complaint was filed a year later.

## I. Whether Exhaustion is Required for One Who is Confined at a Drug Treatment Facility

On appeal, Ruggiero does not contest either that he was a "prisoner" as defined in 42 U.S.C. § 1997e or that he was "confined" at Willard when he filed his complaint. He argues, however, that Willard does not qualify as "any jail, prison, or

other correctional facility" because drug treatment centers are expressly exempt from the definition of "correctional facility" under New York state law.

Section 2 of New York's Correction Law defines a "correctional facility" as including "[a]ny place operated by the [Department of Corrections] and designated by the commissioner as a place for the confinement of persons under sentence of imprisonment." N.Y. Correct. Law § 2(4)(a). Only mental institutions are excluded from this broad definition. *Id.* § 2(4)(b). Section 2 specifies that the definitions contained within it apply throughout New York's Correction Law unless expressly stated. *Id.* § 2. So under section 2, it is not at all clear that Willard would not qualify as a "correctional facility" according to New York law.

Ruggiero, however, points to section 70(1)(c) in Article 4 of New York's Correction Law, which provides that drug treatment campuses are exempt from the definition of "correctional facility." *Id.* § 70(1)(c). Article 4 governs the establishment of correctional facilities, the commitment of individuals to the Department of Corrections, and the custody of inmates. *Id.* §§ 70 to 79–b. For these purposes, it is understandable that New York would want to differentiate between various types of facilities. But it does not necessarily follow that the exclusion is applicable to the entirety of New York's Correction Law. As noted, section 2 explicitly states that its definitions apply throughout the Correction Law absent an express statement to the contrary. And because section 70, at least arguably, cannot reach more broadly than the article in which it is contained, Ruggiero's contention based on that provision that Willard is not a correctional facility under New York law is open to question. However, for this appeal we

will assume that under New York state law Willard is not a "correctional facility."

■ Turning to federal law, Section 803 of the PLRA does not define what is meant by "any jail, prison, or other correctional facility." We have no inclination, however, to look to New York state law for this meaning. There is no indication that Congress intended state law to govern the question or that the PLRA's exhaustion requirement should vary from state to state. The Act is intended "to eliminate unwarranted federal-court interference with the administration of prisons," *Woodford v. Ngo,* — U.S. —, —, 126 S.Ct. 2378, 2387, 165 L.Ed.2d 368 (2006), "to reduce the quantity and improve the quality of prisoner suits," *Porter,* 534 U.S. at 524, 122 S.Ct. 983, and "to . . . afford[ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case," *id.* at 525, 122 S.Ct. 983. These overarching goals are universal; they do not change from state to state. Nor do they logically depend on how particular facilities are characterized under various state laws. The definitions of "correctional facility" under different state laws are unrelated to the purposes underlying the PLRA and therefore do not determine whether the exhaustion requirement applies in any given institution.

Two other courts of appeals have read the phrase "any jail, prison, or other correctional facility" in § 1997e expansively. *See Witzke v. Femal,* 376 F.3d 744 (7th Cir.2004); *Alexander S. v. Boyd,* 113 F.3d 1373 (4th Cir.1997). In *Witzke,* the Seventh Circuit, faced with our question, whether a prisoner confined at a drug treatment facility was required to exhaust administrative remedies, answered it in the affirmative for reasons we find persuasive. In setting out the various types of institutions that trigger the exhaustion re-

quirement, "Congress did not specify a narrow list of institutions, but rather employed multiple generic terms to describe the institutions covered." *Witzke*, 376 F.3d at 753. Section 802 of the PLRA, which governs remedies with respect to suits about prison conditions, defines "prison" as "any Federal, State, or local facility that incarcerates or detains juveniles or adults accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law." 18 U.S.C. § 3626(g)(5). This broad definition of "prison" is similar to the commonly understood definition of "jail" as "a place for the lawful confinement of persons or a prison." *Witzke*, 376 F.3d at 752 (quoting Webster's II New Riverside Dictionary 650 (1988)). And "a correctional institution is a generic term describing prisons, jails, reformatories, and other places of correction and detention." *Witzke*, 376 F.3d at 753 (quoting *Alexander S.*, 113 F.3d at 1383 (quoting Black's Law Dictionary 344 (6th ed.1990))). Moreover, "Congress made the phrase even broader when it chose the expansive word 'any' to precede the list." *Id.* at 753 (citing *United States v. Gonzales*, 520 U.S. 1, 5, 117 S.Ct. 1032, 137 L.Ed.2d 132 (1997) ("any" preceding a phrase indicates that Congress intended the phrase to be interpreted expansively)). *Alexander S.* reached a conclusion similar to that of *Witzke*, holding that juvenile detention facilities are within the scope of the phrase "jail, prison, or other correctional facility." *Alexander S.*, 113 F.3d at 1383.

The PLRA's exhaustion requirement is located in a section of the U.S.Code entitled "Suits by prisoners." 42 U.S.C. § 1997e. By referring to "prisoners," Congress placed a constraint on suits filed by all litigants who could be characterized as prisoners, regardless of the type of facility in which they are imprisoned. We therefore agree with *Witzke* and *Alexan-*

*der S.* that § 1997e includes within its ambit all facilities in which prisoners are held involuntarily as a result of violating the criminal law.

There is no dispute that Ruggiero, when he filed his suit, was confined to Willard as a result of his parole violation. Ruggiero was not free to leave Willard, a secure facility, during his stay, and if he had elected not to undergo drug treatment there, he would have been incarcerated in a regular prison. Thus, because Ruggiero was held in a state facility based on his violation of the criminal law, he was subject to the PLRA's administrative exhaustion requirement.

## II. Whether Ruggiero's Failure to Exhaust Could be Excused or Justified

■ This court has recognized that "while the PLRA's exhaustion requirement is 'mandatory,' *Porter*, 534 U.S. at 524, 122 S.Ct. 983 . . ., certain caveats apply." *Giano v. Goord*, 380 F.3d 670, 677 (2d Cir. 2004). These caveats fall into three categories: when (1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such as way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement. *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir.2004).

■ After we heard argument in this appeal, the Supreme Court decided *Woodford v. Ngo*, —— U.S. ——, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). In *Woodford*, after the prison authorities rejected the prisoner's administrative grievance as untimely, the prisoner appealed that decision administratively without success and followed with an action in federal court. The

Supreme Court rejected the prisoner's argument that he had exhausted his administrative remedies because no such remedies remained available to him. The Court held that untimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirement. *Id.* at 2382. The Court explained that the PLRA requires "proper exhaustion," which " 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).' " *Id.* at 2385 (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1024 (7th Cir.2002)). PLRA exhaustion thus "demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 2386. We need not determine what effect *Woodford* has on our case law in this area, however, because Ruggiero could not have prevailed even under our pre-*Woodford* case law.

■ In claiming that his non-exhaustion should be excused, Ruggiero makes two arguments. First, he contends that his September 2000 interview with investigators, which resulted in the remedy that he sought—a transfer that separated him from the allegedly abusive officers—excused his failure to exhaust. Second, he claims that the Defendants–Appellees' alleged failure to timely provide Ruggiero with an inmate handbook should estop them from raising non-exhaustion as a defense. Neither argument is persuasive.

Ruggiero relies on *Abney v. McGinnis,* 380 F.3d 663 (2d Cir.2004), to contend that administrative remedies were not available to him. In *Abney,* a prisoner filed a formal grievance regarding the inadequacy of his orthopedic footwear on four occasions. Despite the fact that each of his grievances was decided in his favor, his defective footwear was never remedied. The district court dismissed the prisoner's case for fail-ure to exhaust. *Id.* at 666. We reversed on the basis that "DOCS regulations fail to provide inmates with further procedural recourse where the superintendent breaches [his duty to verify compliance with grievance decisions favorable to the inmate]." *Id.* at 668. Thus, when the prison failed to implement the administrative decision, the prisoner's only option was to file a new grievance, which he did repeatedly. *Id.* at 669. We held that where prison regulations fail to provide a remedy for implementation failures, prisoners who receive a favorable outcome to their initial grievance that remains unimplemented have fully exhausted their available remedies. *Id.*

Comparing his situation to that of the plaintiff in *Abney,* Ruggiero claims that administrative remedies were not available to him because, when he was interviewed as part of the investigation of the August 2000 incident, he told investigators about all of the instances of his alleged mistreatment that had transpired to that date and, as a result of that interview, he was transferred to Riker's Island. According to Ruggiero, this transfer, which separated him from the allegedly abusive officers, provided him with a remedy for the mistreatment that is the subject of his complaint, obviating the need to pursue further administrative remedies.

But the standard established in *Abney* is not whether the prisoner has a *reason* to pursue administrative remedies; it is whether such remedies are *available* to him. No such remedies were available in *Abney* because there was no way to challenge a failure to implement. *Id.* But in this case, the remedy was available: Ruggiero could have filed a grievance over his mistreatment notwithstanding the prison's decision to segregate him from the accused officers.

We find Ruggiero's situation close to that presented in *Braham v. Clancy*, 425 F.3d 177 (2d Cir.2005). In *Braham*, an inmate repeatedly requested a cell transfer because was afraid that his cell-mate would assault him. Prison officials ignored these requests, but the inmate never filed a grievance. The inmate was subsequently assaulted by his cell-mate and then was transferred to a different cell. *Id.* at 179. The inmate argued that his failure to exhaust formal grievance procedures was excused because he received the cell transfer, the relief he had been asking for, and therefore he had no remaining available administrative remedies with respect to that relief. *Id.* at 180. We rejected the argument, relying on *Booth v. Churner*, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001), which held that a failure to exhaust an available administrative procedure is not excused by the fact that the remedies offered through that process are not the ones that the inmate seeks. *Id.* at 739–41, 121 S.Ct. 1819. Even after the inmate in *Braham* had been transferred to another cell, a formal grievance still would have allowed prison officials to reconsider their policies and discipline any officer who had failed to follow existing policies. *Braham*, 425 F.3d at 182–83. Thus, unlike the plaintiff in *Abney*, who had no means available to challenge the prison's failure to implement the administrative decision, the plaintiff in *Braham* did have available remedies and was required to exhaust them. *Id.*

▮ Like the cell transfer belatedly granted to the plaintiff in *Braham*, Ruggiero's transfer to Riker's Island, while arguably providing him with the relief he sought, did not provide him with all of the relief available to him. And as *Booth* and *Braham* make plain, so long as some remedy remains available, failure to exhaust is not excused. *Booth*, 532 U.S. at 738–39,

121 S.Ct. 1819; *Braham*, 425 F.3d at 183. Despite his separation from the officers who allegedly mistreated him, a formal grievance might have resulted in "developing ... policies and procedures pertaining to the grievance or disciplining the relevant officers." *Braham*, 425 F.3d at 183 (internal quotations and alterations omitted). Thus, Ruggiero's transfer to Riker's Island did not render all administrative remedies unavailable, and the exception identified in *Abney* is inapplicable.

We turn to Ruggiero's claim that his September 2000 statement to the investigators, standing alone, satisfied the administrative exhaustion requirement. He invokes *Marvin v. Goord*, 255 F.3d 40 (2d Cir.2001), for the proposition that informal means of grieving satisfy the PLRA's exhaustion requirement when they result in a resolution in the prisoner's favor. But *Marvin* does not help Ruggiero. In *Marvin*, after we decided to remand to the district court for a determination whether any of the plaintiff's complaints were subject to an exhaustion requirement, *id.* at 43, we noted in a footnote that the prisoner's success in eliminating the prohibition to which he had been subjected—to wit, receipt of legal mail and sending of any mail to his attorney for a 23–month period—to which he had objected by informally complaining to various correctional officers, likely meant that his claim regarding that practice was exhausted administratively. *Id.* at 43 n. 3. We stated that "*Marvin*'s submissions indicate that he succeeded in overturning the prohibition informally by complaining to various correctional officers," and that "[r]esolution of the matter through informal channels satisfies the exhaustion requirement" with respect to that legal-mail-curtailment claim. *Id.* Contrary to Ruggiero's suggestion, *Marvin* does not imply that a prisoner has exhausted his administrative remedies ev-

ery time he receives his desired relief through informal channels.

Requiring Ruggiero to grieve his mistreatment before filing suit despite the relief afforded by his transfer not only comports with our precedent, it is also consistent with the purposes of the PLRA. That law was meant reduce the number of prisoner suits by "afford[ing] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter*, 534 U.S. at 525, 122 S.Ct. 983. Giving prison officials the first opportunity to address prisoners' complaints serves several purposes. Such an opportunity allows the prison to take corrective action, which may satisfy the prisoner and obviate the need for litigation; it might result in improvements to prison administration; and, for those cases that do find their way into the courts, it will facilitate adjudication by ensuring a fully—developed administrative record that "clarifies the contours of the controversy." *Id.* While Ruggiero may not have been interested in the results that pursuing his claim through OCCF's grievance procedure would have yielded, the larger interests at stake under the PLRA were at issue, and thus exhaustion was required.

■ A prisoner's failure to exhaust also can be excused if the defendants' actions estop them from presenting the failure to exhaust as a defense, *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir.2004), or their actions render grievance procedures de facto unavailable, *Hemphill*, 380 F.3d at 687. Thus, we have recognized that if the defendants' own actions prevent a prisoner from pursuing administrative remedies, the prisoner's failure to avail himself of those remedies cannot bar his access to the courts. *See id.*

■ Ruggiero contends that he was not timely provided an inmate handbook and

that therefore Defendants–Appellants should be estopped from raising failure to exhaust as a defense. He further argues that because this fact is contested, his complaint should not be dismissed on summary judgment. Ruggiero may be correct that his possession of an inmate handbook is a contested issue of fact, despite a record that shows he received the handbook on five occasions. But it is not a material fact. Whether or not Ruggiero actually possessed the handbook, he nowhere claims that he was unaware of the grievance procedures contained within it or that he did not understand those procedures.

In our prior cases recognizing that defendants' actions may estop them from raising non-exhaustion as a defense, each prisoner alleged that defendants took affirmative action to prevent him from availing himself of grievance procedures. *E.g.*, *Ziemba*, 366 F.3d at 162 (beating, threatening, and denying grievance forms and writing implements); *Hemphill*, 380 F.3d at 687 (threats of retaliation). Ruggiero does not allege beatings or threats of retaliation for filing a grievance or that he made any attempt to file a grievance and was denied that opportunity by Defendants–Appellants. He points to no affirmative act by prison officials that would have prevented him from pursuing administrative remedies.

In sum, Ruggiero has not presented facts that justify an exception to the PLRA's administrative exhaustion requirement.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment granting summary judgment to the Defendants–Appellees.