In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-3185

WENONA WHITE,

*Plaintiff-Appellant,*

*v.*

TIMOTHY F. BUKOWSKI, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 2:11-cv-02221-CSB-DGB — **Colin S. Bruce**, *Judge.*

ARGUED AUGUST 4, 2015 — DECIDED SEPTEMBER 1, 2015

Before POSNER, KANNE, and HAMILTON, *Circuit Judges.*

POSNER, *Circuit Judge.* The plaintiff in this suit under 42 U.S.C. § 1983 accuses members of the Kankakee County Sheriff's Office of deliberate indifference to her need for proper prenatal care and prompt transport to a hospital for delivery of her baby while she was in their temporary custody at an Illinois county jail on suspicion of conspiring to commit bank fraud (a federal offense). The district judge

dismissed the suit on the ground that the plaintiff had failed to exhaust her available administrative remedies (that is, remedies available within the correctional system itself) as required by 42 U.S.C. § 1997e(a).

When she arrived at the jail she was almost eight months pregnant. Eleven days later she experienced birth pangs and was taken by ambulance to a hospital, where she gave birth, to a girl, that day. Her complaint charges that the child suffered serious birth defects because of oxygen deprivation attributable to a displacement of the placenta from its proper location in the uterus. She was returned to the jail several days after the birth but remained there for only four days before being transferred to another jail. Two months later, having been shifted among several places of detention, she pleaded guilty to the conspiracy charge, for which she was later sentenced to 50 months in prison. She filed this suit two years after the events of which she complains.

She alleges that the defendants failed to take a proper medical history (which she claims would have revealed complications in the birth of her most recent child) when she was first placed in the jail; failed to respond to several requests by her for medical assistance (though the record contains only one request, a complaint about labor pains to which a member of the medical staff responded, and also reveals that a physician's assistant at the jail wanted to check up on her previously but she refused because she wasn't feeling well and it was too early in the morning); and, most important, failed to react quickly enough when she went into labor and needed to be rushed to the hospital.

Our opinion in *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), encourages district courts to determine, before sched-

uling discovery relating to the merits of a prisoner's civil rights suit, whether administrative remedies have been exhausted. The plaintiff points out that the defendants failed to press the issue of exhaustion until after a year and a half of discovery relating to the merits. She argues that their delay forfeits their defense of failure to exhaust, and also that there were no administrative remedies available to her. As the defendants raised the defense of failure to exhaust in their answer to the plaintiff's complaint and as there is no indication that their delay in pursuing that defense harmed her, we'll consider only her claim that she had no administrative remedies.

The purpose of a prisoner's filing a grievance is to obtain a change of some sort—to obtain better medical care, for example. To be motivated to file a grievance the prisoner has to be aware of the need for action by the prison or jail. Suppose he becomes ill because of unsanitary conditions in his cell, reports his illness to a guard, is promptly whisked away to the prison infirmary, is treated competently there, and forthwith recovers. Provided he wasn't anticipating a renewal of the unsanitary conditions, he would have no motive for filing a grievance.

This case seems similar. The plaintiff was almost eight months pregnant when placed in the jail. Women at that stage of pregnancy frequently experience symptoms such as she did, like nausea. It is unclear from the record whether she was aware that she was not receiving (as she claims in her lawsuit) adequate medical care. True, she claims to have asked for additional care, and that it was refused, but the nature of the care she sought is unclear. It may have been care designed to make her more comfortable but irrelevant to the

prospects for a successful delivery of the baby. It's likewise unclear whether she realized the possible significance of an incomplete medical history.

Labor began and she was taken to the hospital and the baby was delivered. It had serious birth defects, and suppose the plaintiff suspected that they were attributable to mistreatment that she had received in the jail, either a lack of prenatal care during her eleven-day stay there or excessive delay in transporting her to the hospital. Still, what good would it have done her to file a grievance? She wasn't about to become pregnant again, and in fact had just a few more days in the jail. What could she have gained from filing a grievance? We can't find an answer.

Section 1997e(a) provides that "no action shall be brought with respect to prison conditions … until such administrative remedies *as are available* are exhausted" (emphasis added). We gave an example of unavailability in *Perez v. Wisconsin Department of Corrections*, 182 F.3d 532, 538 (7th Cir. 1999): "Suppose the prisoner breaks his leg and claims delay in setting the bone is cruel and unusual punishment. If the injury has healed by the time suit begins, nothing other than damages could be a 'remedy,' and if the administrative process cannot provide compensation then there is no administrative remedy to exhaust."

Some cases suggest that as long as there is *something* the jail or prison could do in response to a grievance, even if it is not the specific relief sought by the prisoner, a grievance must be filed or the prisoner loses his right to sue. See, e.g., *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002); *Larkin v. Galloway*, 266 F.3d 718, 723 (7th Cir. 2001). The principal decision in this line, *Booth v. Churner*, 532 U.S. 731 (2001), held that a

prisoner could not avoid the requirement of exhausting his administrative remedies by suing only for damages, even if the prison's grievance system provided no damages remedy. But in *Booth* the filing of a grievance could have provided nonmonetary relief, such as disciplinary measures against the officers who supposedly assaulted him—measures that would have discouraged them from assaulting him in the future. The Court specified that there was no requirement to exhaust "where the relevant administrative procedure lacks authority to provide *any* relief or to take *any* action whatsoever in response to a complaint." *Id.* at 736 (emphasis added). For how could a prisoner be expected to file a grievance that would be academic because no response would benefit him or her in the slightest? Yet that appears to be the situation of the plaintiff in this case even more clearly than that of the prisoner in the hypothetical case discussed in *Perez v. Wisconsin Department of Corrections*, *supra*. In short, if one has no remedy, one has no duty to exhaust remedies.

The plaintiff may have had no reason to think at the time that her medical care in the jail was seriously inadequate, that it posed a threat to the fetus. By the time she discovered its inadequacy, or thought she had, which was when the baby was born with severe birth defects, it was too late for her to obtain a remedy of better prenatal care. The prenatal phase was over. Likewise it was too late to request prompt transport to the emergency room for her delivery. There was *no* remedy within the power of the jail to grant for the baby's birth defects.

Some cases hold that even if the jail or prison can do nothing whatever for the complaining prisoner, and even if that's obvious to a prisoner who not unreasonably believes

himself to be a victim of deliberate indifference to a medical or other legitimate need—the prisoner must file a grievance if he is to preserve his right to sue. *Napier v. Laurel County*, 636 F.3d 218, 223–24 (6th Cir. 2011); *Ruggiero v. County of Orange*, 467 F.3d 170, 177 (2d Cir. 2006); *Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 35 (1st Cir. 2002). Contra, *Rodriguez v. Westchester County Jail Correctional Department*, 372 F.3d 485, 488 (2d Cir. 2004). There is even a suggestion in the *Ruggiero* case that the filing of a grievance is a prerequisite to being allowed to sue if the grievance, though it could result in no alleviation of harm or hardship to the grievant, "might result in improvements to prison administration." 467 F.3d at 178. That would be tantamount to making prisoners who want to file civil rights lawsuits serve as ombudsmen—as a prerequisite to suing, such a prisoner would have to file a grievance that sought a remedy inapplicable to his or her personal situation, though maybe helpful to other prisoners.

The *Rodriguez* decision held that the plaintiff's "transfer from the jurisdiction of Westchester County officials precluded dismissal of his complaint because the transfer rendered administrative remedies no longer 'available,' a condition of the exhaustion requirement of section 1997e(a)." Indeed so, for that subsection of section 1997e (echoed in the *Booth* opinion) provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies *as are available* are exhausted" (emphasis added). Surprisingly, the Second Circuit in *Ruggiero* did not cite its earlier decision in *Rodriguez*, even though *Rodriguez* postdates the Supreme Court's decision in *Booth v. Churner*.

The defense that the plaintiff in the present case failed to exhaust her administrative remedies failing, the case must move on to proceedings on the merits with respect to her claim that the delay in taking her to the hospital when she went into labor contributed to the birth defects. She had no opportunity to grieve that delay until after the harm done by it was complete and could not be undone by the defendants.

But were that the only ground (call it the "too late" ground) for rejecting the district court's finding of a failure to exhaust administrative remedies, we might need to remand for a hearing to determine the applicability of the exhaustion defense to the second part of the plaintiff's claim: that inadequate medical care during the eleven days prior to delivery contributed to the birth defects. The defense of failure to exhaust would be stronger with regard to that claim, since a grievance submitted before the plaintiff gave birth might have elicited improved medical care that could conceivably have averted or at least reduced the birth defects, although it might prove impossible to determine the causal role of inadequate pre-delivery medical care or lack thereof.

But there is an alternative ground for finding administrative remedies unavailable to the plaintiff, and that ground applies to her entire claim—including therefore her claim that her in-jail, pre-delivery care was inadequate. The jail's grievance procedure, as described in the inmate handbook, established no deadline for filing a grievance, and, as admitted by the appellees' counsel at oral argument, the plaintiff would not have known that she was going to be transferred to another jail four days after she returned from the hospital. The decision whether and when to transfer her was in the hands of the U.S. Marshals Service, which determines when

federal prisoners are transferred between jails, and which for reasons of security ordinarily doesn't give prisoners advance notice of when they'll be transferred. The appellees conceded at argument that the plaintiff could not file a grievance after she was transferred from the jail, and so, because she didn't know when she'd be transferred, her possible administrative remedies had no knowable deadline.

*King v. McCarty*, 781 F.3d 889, 895 (7th Cir. 2015), held that a county jail's administrative remedies were unavailable to an inmate transferred to a state prison. The jail required that the grievance be filed within five days after he arrived at the prison. We said "it is not plausible that he could have asked for the form, received a response, and mailed back the completed paperwork before the five-day deadline had passed." *Id*. Or as we explained in *Hurst v. Hantke*, 634 F.3d 409, 412 (7th Cir. 2011), "an administrative remedy that would be forfeited for failure to comply with a deadline that in the circumstances could not possibly be complied with [is] not … 'available' within the meaning of 42 U.S.C. § 1997e(a)."

Uninformed about any deadline for filing a grievance— not told that her transfer date would be the deadline or when that transfer date might be—the plaintiff cannot be faulted for not having filed a grievance before she was transferred from the jail for good. "Prisoners are required to exhaust grievance procedures they have been told about, but not procedures they have not been told about." *King v. McCarty*, *supra*, 781 F.3d at 896; compare *Woodford v. Ngo*, 548 U.S. 81, 95 (2006). After she was transferred, it was too late for her to file a grievance because, as the defendants' lawyer acknowledged, the jail would not entertain a grievance filed

by a person no longer detained in the jail, presumably because the jail could do nothing for such a person unless it awards damages to successful grievants, which the jail in this case does not.

Even if the plaintiff had been told upon her return from the hospital that she had only four days in which to file a grievance, that deadline would (as in *Hurst*) have been unreasonably short for a woman who had just given birth to a severely impaired child. Like the plaintiff in the *King* case she was effectively prevented from filing a grievance, and so there can be no argument that she failed to exhaust her administrative remedies.

The judgment must be vacated and the case remanded for proceedings on the merits of the section 1983 claim. The district judge erred in ruling that the plaintiff had failed to exhaust administrative remedies; no administrative remedies were available to her. We do not address the merits of her claims or discuss the damages that may be available to her if she prevails, as opposed to the damages to which her child and the child's father, who have brought suit separately from her, may be entitled.

REVERSED AND REMANDED