In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-1399

RODOLPH LANAGHAN,

*Plaintiff-Appellant,*

*v.*

DARRYL KOCH, Correctional Officer, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:15-cv-00929-WCG — **William C. Griesbach**, *Chief Judge.*

ARGUED FEBRUARY 22, 2018 — DECIDED AUGUST 29, 2018

Before BAUER, EASTERBROOK, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* On August 3, 2015, Rodolph Lanaghan filed a suit under 42 U.S.C. § 1983 alleging that the defendants violated his rights under the Eighth Amendment and asserting a negligence claim under state law. Specifically, he asserted that when he was an inmate at the Oshkosh Correctional Institution ("Oshkosh"), the defendants were deliberately indifferent to his serious medical needs and were negligent in the response to his severe muscle disease,

Dermatomyositis with Polymyositis. The district court conducted a *Pavey* hearing to determine whether Lanaghan had failed to exhaust administrative remedies prior to filing the federal civil action as required under the Prison Litigation Reform Act (PLRA), including whether prison officials rendered the complaint process unavailable to Lanaghan by not lending assistance to him in preparing the complaint and isolating him from inmates that could have assisted him in filing the complaint. See *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008) (requiring district court to hold an evidentiary hearing where exhaustion or lack thereof is not apparent). Following the *Pavey* hearing, the district court held that Lanaghan had failed to exhaust available administrative remedies and dismissed the Eighth Amendment claim and declined to exercise supplemental jurisdiction over the state law claim. Lanaghan now appeals that determination to this court.

The PLRA requires a prisoner to exhaust all administrative remedies available prior to filing a federal lawsuit. Under Wisconsin law, an inmate is required to file a grievance/complaint within 14 days of the occurrence giving rise to the complaint. Wisc. Admin. Code § DOC 310.09. No one disputes that Lanaghan failed to file his complaint within that time frame. The only question is whether those administrative remedies were actually available to him given his severe medical limitations and the constrictions of prison policies and their implementation here.

The parties take no issue with the facts underlying this case, arguing only as to the district court's legal conclusions from those facts. We therefore present the facts as set forth in the district court's decision.

In early November 2011, Lanaghan began experiencing physical problems; his scalp was inflamed and itched, his abdominal muscles and back muscles hurt, and his ears were red and inflamed. Those symptoms worsened in the two weeks that followed, by which time "[h]is head was full of sores that were bleeding, pussing and scabbing down to his forehead[,] … [h]e had spots and scabs around his eyes, his ears cauliflowered and were bleeding and pussing, and a lump formed on the back of his neck." Dist. Ct. Order of January 30, 2017 ("Dist. Ct. Order") at 2. The pain had spread throughout his body making it difficult for him to sit, stand, and walk, with the most severe pain located in the muscles of his abdomen and back.

Lanaghan testified that he reported to Oshkosh's Health Services Unit on November 21, 2011, but that he was evaluated and treated only for the rash and not for his other ailments. He subsequently submitted more health services requests, reporting a large, swollen bulge on his back, and received further treatment from the Health Services Unit on November 29 and 30 and December 1 and 3. Around that time, Lanaghan increasingly experienced problems with activities of daily living and began relying on other inmates to "brush his teeth, wash his face, comb his hair, help him eat, and even help him on and off the toilet. Lanaghan testified that he sat in the dayroom crying because he was in so much pain." Dist. Ct. Order at 3.

Lanaghan was rushed to the hospital on December 6 and diagnosed with Dermatomyositis with Polymyositis, a rare muscle disease. Though he returned a week later with medication and treatment instructions, his conditions worsened immediately upon his return. As the district court relates:

> Audie Draper [another inmate] testified that
> Lanaghan's disease "progressed into something
> so unbelievably horrible." The rash spread
> throughout his entire body, and the bleeding
> and pussing sores appeared on his ears and
> head. His muscles, including his swallow mus-
> cles, began shutting down, causing him to
> drown in his own saliva. He was no longer eat-
> ing or sleeping. Lanaghan's pain was so severe
> that he was confined to a wheelchair. He could
> not sit up, lay down, or move.

Dist. Ct. Order at 3.

On December 20, Lanaghan attempted to prepare and file an inmate complaint form regarding the inadequate treatment for his health condition. With Lanaghan in a wheelchair, Draper transported Lanaghan to Oshkosh's dayroom—an area in which inmates were allowed to freely congregate—in order to help him draft and file the grievance because Lanaghan could no longer write on his own by that time. When they arrived, they observed that all of the recreational tables were occupied by other inmates, but that there were vacant tables in the study area. They asked Officer Koch for permission to use one of those vacant tables with Draper to prepare Lanaghan's grievance, but were denied that permission. Draper then asked Lieutenant Chase to countermand Koch's decision, but Chase told them that the study tables could be used only for studying and denied them access to that table. The Open Center Handbook for that building which had been provided to each inmate stated that "tables in end dayrooms are for studying only with staff permission." In practice, that rule appears to have allowed for some discretion. As the

district court noted, according to Lanaghan and Draper some correctional officers were often lenient with enforcement of the rule.

Unable to secure a table, Draper returned Lanaghan to his cell where, according to his testimony, he "spent the next week trapped inside his own body, believing he was going to die." Dist. Ct. Order at 4. On December 28, 2011, he was again hospitalized, this time for approximately two months. Following his hospitalization, he spent two weeks at the Dodge Infirmary for physical therapy.

Although Lanaghan returned to Oshkosh in March 2012, he did not attempt to file any grievance at that time. He later decided to file a federal lawsuit, and learned that he had to file a complaint before proceeding with a lawsuit. He then filed an inmate complaint on July 2, 2012, which was rejected as untimely. The institutional complaint examiner, Theresa Murphy, testified that his physical condition would have been good cause to extend the time for filing until March 2012, but it could not support a delay until July which was months after his return from the hospital. Lanaghan's request for review of the rejected grievance was denied on August 2, 2012.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted*." 42 U.S.C. § 1997e(a) (emphasis added). State law establishes the administrative remedies that a state prisoner must exhaust for purposes of the PLRA. *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016). Under the Wisconsin Administrative Code § DOC 310.09 an inmate must file a complaint within 14 calendar days after the

occurrence giving rise to the complaint, unless good cause exists to excuse a delay. That good cause exception to the 14-day limit, however, was not included in the handbook provided to inmates, which provided only that the inmate had to file the compliant within 14 days.

Before the district court, Lanaghan argued that the grievance process was unavailable to him because Officer Koch and Lieutenant Chase prevented him from filing a grievance by denying him access to a table which was necessary for him to complete the form and that, in those circumstances, he was physically unable to draft and file a grievance within the 14-day period. The district court conducted an evidentiary hearing considering whether prison officials rendered the complaint process unavailable to Lanaghan by not lending assistance to him in preparing the complaint and isolating him from inmates that could have assisted him in filing the complaint. Following that hearing, the district court held that Lanaghan had failed to exhaust available administrative remedies. In so finding, the court noted that "a remedy becomes unavailable to an inmate if 'prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting.'" Dist. Ct. Order at 7, citing *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). It held that Chase and Kohl did not use affirmative misconduct, deny him access to complaint forms, or provide him with improper information about the grievance procedure, and that their denial of a study table did not deny him access. The court opined that Lanaghan could have waited for a dayroom table to become vacant rather than return to his cell. In addition, the court held that "[e]ven assuming Lanaghan was not physically able to draft an inmate complaint before December 28, 2011, there was nothing to prevent him from filing

the grievance immediately after he returned." Dist. Ct. Order at 8.

Lanaghan now appeals that determination, arguing that even given the factual findings by the district court following the hearing, the legal conclusions are improper. Therefore, the issue before us in this appeal is whether the exhaustion requirement of the PLRA bars Lanaghan's federal action. We review factual findings for clear error, but review *de novo* the court's determination as to whether the claim was procedurally barred as unexhausted. *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018); *Pyles*, 829 F.3d at 864. The burden of proof is on the defendants to establish that administrative remedies were not exhausted, as it is an affirmative defense. *Id.*; *Dole*, 438 F.3d at 809.

The PLRA exhaustion requirement does not "demand the impossible." *Pyles*, 829 F.3d at 864. "Remedies that are genuinely unavailable or nonexistent need not be exhausted." *Id*. The district court recognized that a remedy could become unavailable if affirmative misconduct by the defendants prevented Lanaghan from filing a grievance, but a grievance procedure can be unavailable even in the absence of affirmative misconduct. The term "available" is given its ordinary meaning, and it does not include any requirement of culpability on the part of the defendant. We have found remedies unavailable in a number of instances in which the inmate, through no fault of his own, could not have accessed the grievance procedure. See *Hurst v. Hantke*, 634 F.3d 409, 412 (7th Cir. 2011) (where an inmate claimed to be incapacitated by a stroke, recognizing that a remedy is not available if an inmate is physically unable to pursue it); *Pyles*, 829 F.3d at 866 (case not barred for failure to exhaust where inmate submitted

grievance form to law library and it failed to return the form prior to the filing deadline; inmate acted diligently and untimeliness was due to no fault of his own); *Swisher v. Porter County Sheriff's Dept.*, 769 F.3d 553, 555 (7th Cir. 2014) (inmate entitled to assume he did not have to file a written grievance where told by officials not to do so because the problem was being resolved and where he was not informed as to how to invoke formal procedures).

Therefore, the proper focus is not whether the defendants engaged in affirmative misconduct, but whether Lanaghan was not able to file the grievance within the time period through no fault of his own. The availability of a grievance procedure is not an "either-or" proposition. *Kaba v. Stepp*, 458 F.3d 678, 685 (7th Cir. 2006). As we noted in *Kaba*, "[s]ometimes grievances are clearly available; sometimes they are not; and sometimes there is a middle ground where, for example, a prisoner may only be able to file grievances on certain topics." *Id*. The availability of a remedy is therefore a fact-specific inquiry. For instance, if a prison had a procedure whereby written grievance forms were provided to all inmates and they were required to fill them out without any assistance from others, that procedure might render the grievance remedy available for the majority of inmates, but the same procedure could render it unavailable for a subset of inmates such as those who are illiterate or blind, for whom either assistance or a form in braille would be necessary to allow them to file a grievance.

This case presents a similar scenario. Even if Koch and Chase were acting in good faith in following the rules regarding study tables, Lanaghan's particular circumstances in conjunction with that decision rendered the grievance remedy

unavailable to him. The undisputed facts establish that Lanaghan faced severe physical limitations during the 14-day period at issue here. With the help of Draper, he was transported in his wheelchair to the dayroom to fill out the grievance form. He could not fill out the form himself because he was unable to use his hands sufficiently to fill in the form. But at the dayroom, none of the tables were available to him, and Koch and Chase denied him access to the study tables for that purpose, thus denying the only means available to fill out the form at that time.

The district court stated that Lanaghan could have waited for a table, but the court pointed to no facts to support that conclusion. In fact, Chase testified that inmates were not allowed to congregate in the dayroom without using a table or chair. He also acknowledged that other than the occupied tables, the other chairs were in the TV room, but inmates were not allowed to write in that room and were not even allowed to have anything in their possession while sitting in those seats, and thus could not have writing implements with them. Therefore, no evidence indicated that Lanaghan could have merely waited in the dayroom to fill out a grievance form. And the defendants, who have the burden to prove that remedies were available, have pointed to no such evidence. Moreover, inmates were not allowed to have visitors in their cell, thus eliminating that as an optional meeting place in which to fill out the grievance form. But regardless of whether inmates could wait for a table to open, there was no testimony and no finding by the district court that Lanaghan was physically capable of remaining there for any length of time, or of waiting in his cell and later returning to the dayroom. The description of his physical condition and the two-month hospitalization a week later indicate that he had little physical stamina at the

time. The facts found by the district court do not support a conclusion that he could have waited for a table in the day-room and filled out the form that day, and no one argues that he had another potential opportunity to complete the grievance form prior to his hospitalization.

We have held that "a remedy is not 'available' within the meaning of the Prison Litigation Reform Act to a person physically unable to pursue it." *Hurst*, 634 F.3d at 412. Accordingly, the factual findings in this case do not establish that a remedy was available to Lanaghan that he failed to pursue.

The district court nevertheless concluded that even assuming that Lanaghan was physically incapable of filing the grievance within the 14-day period, nothing prevented him from filing the grievance immediately after he returned to Oshkosh in March 2012—a time at which it might have been considered because his physical incapacity could have constituted good cause for the delay. That holding, however, holds Lanaghan responsible for failing to follow a procedure of which he was not aware and which was not presented in the handbook which described the grievance process.

The handbook provided to inmates and which they were encouraged to consult stated only that grievances must be filed within 14 days. The 14-day provision was unqualified and without exception. Therefore, it not only failed to inform Lanaghan that he could file a grievance beyond that period if he could show good cause, but by identifying the unqualified 14-day limitation, it negated the possibility of a filing beyond that time period. A secret grievance procedure is no procedure at all, at least absent some evidence that the inmate was aware of that procedure.

We reached a similar conclusion in a number of cases. For instance, in *Hurst*, an inmate claimed that his physical incapacitation as a result of a stroke was good cause for his untimely filing of a grievance, but his claim was rejected because he failed to attach evidence of that incapacitation. 634 F.3d at 411. No such evidentiary requirement was present in the Illinois Administrative Code, and we rejected the requirement that such evidence must be attached, which amounted to a "secret supplement to the state's administrative code." *Id*. We held that "a remedy is not available if the essential elements of the procedure for obtaining it are concealed." *Id*.; see also *White v. Bukowski*, 800 F.3d 392, 397 (7th Cir. 2015) (recognizing that "[p]risoners are required to exhaust grievance procedures they have been told about, but not procedures they have not been told about"); *Dole,* 438 F.3d at 811 (holding that the inmate had done all that was reasonable to exhaust because the regulations were not clear as to how to proceed once a timely grievance was lost).

The defendants, who have the burden to prove an available remedy, did not present evidence that Lanaghan was aware in March 2012 that he could file beyond the 14-day period if he could show good cause. All of Lanaghan's prior grievances had been filed within the 14-day requirement, and he testified that he believed that the time to file a complaint had expired. He also testified that he later filed in July only after becoming aware that he had to file a complaint prior to filing a lawsuit. And, as discussed, the handbook provided that outlined the grievance procedure did not alert him to it. The district court did not make any finding that Lanaghan was aware of the good cause exception that would extend the deadline.

The defendants, however, argue that the first section of the handbook indicated that the complaint process is governed by Chapter 310 of the Administrative Code, and that inmates could review the Administrative Code in the library. If the handbook outlining the grievance procedure had indicated that grievances must be filed within 14 days unless certain exceptions were met, then that cite to the Administrative Code might have some utility. But the evidence in this case is that the 14-day limitation was not qualified, and in that situation the mere reference to the Code did not apprise Lanaghan of the availability of the grievance procedure beyond the 14 days. The defendants have not met their burden of establishing that a remedy was available to Lanaghan that he failed to exhaust.

Accordingly, the decision of the district court is VACATED and the case REMANDED for further proceedings consistent with this opinion.