# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
POND, MORRIS, and JUETTEN
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Private First Class DONIVAN C. RIPPY**
**United States Army, Appellant**

ARMY 20230633

Headquarters, Joint Readiness Training Center and Fort Polk
Maureen A. Kohn, Military Judge
Colonel Travis W. Elms, Staff Judge Advocate

For Appellant: Colonel Philip M. Staten, JA; Major Robert D. Luyties, JA (on brief); Lieutenant Colonel Autumn R. Porter, JA; Major Robert D. Luyties, JA (on reply brief).

For Appellee: Colonel Richard E. Gorini, JA; Major Lisa Limb, JA; Captain Anthony J. Scarpati, JA (on brief).

27 August 2025

------------------------------------
OPINION OF THE COURT
------------------------------------

JUETTEN, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of one specification of solicitation to produce child pornography, nine specifications of sexual abuse of a child by communicating indecent language, and one specification of sexual abuse of a child by indecent conduct, in violation of Articles 82 and 120b, Uniform Code of Military Justice, 10 U.S.C. §§ 882 and 920b (2019) [UCMJ]. The military judge sentenced appellant, pursuant to the specified terms of his plea agreement, to a dishonorable discharge, eight years of confinement, total forfeiture of all pay and allowances, and reduction to the grade of E-1. Appellant raises four assignments of error pursuant to Article 66, UCMJ, two of which merit discussion but no relief.[1]

---

[1] We have also given full and fair consideration to the four matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find them to be without merit.

## BACKGROUND

Appellant met the victim, the eleven-year-old daughter of another soldier, through a mutual family friend while stationed at then Fort Johnson, Louisiana.[2] Shortly thereafter, appellant began grooming her for a sexual relationship.[3] On multiple occasions from January to April 2023, appellant kissed the victim on her lips in a sexual manner, including one time in her bedroom. From May to June 2023, appellant had multiple conversations through TikTok's direct message application with the victim, where he solicited her to send him a video of her masturbating, made multiple comments related to masturbation, asked for pictures of the victim in her bra or bikini, and made other comments of a sexual nature. These conversations culminated with appellant asking the victim if she was sexually aroused and asking to meet her in a specific location near her house to engage in sexual conduct. The victim denied his request.

On 12 July 2023, a military judge presided over a pre-referral proceeding under Article 30a, UCMJ, for a search warrant request for a TikTok account related to appellant. On 20 November 2023, court-martial charges were preferred against appellant, and on 21 November 2023, appellant waived his Article 32 hearing and submitted a plea agreement. Appellant, "hav[ing] examined the charges and their specifications preferred against [him] and all the supporting evidence thus far produced by the Government . . . offer[ed] to enter into the . . . Plea Agreement pursuant to Rule for Courts-Martial (R.C.M.) 705 and Article 53a, UCMJ[:]" to enter a plea of guilty at a general court-martial to Charge II and its Specification, and Charge III and its Specifications. In exchange for appellant's plea of guilty, he requested a reduction to the grade of E-1, total forfeiture of all pay and allowances, to be confined for eight years, to be dishonorably discharged, and no other punishments. The convening authority accepted the plea agreement on 27 November 2023, agreed to withdraw and dismiss[4] Charge I and its Specification (attempted sexual assault of a child), and referred the charges to a general court-martial.

Appellant's guilty plea was held on 7 December 2023, during which the military judge went over appellant's plea agreement with him. Appellant confirmed

---

[2] On 11 June 2025, the Department of the Army announced that Fort Johnson was re-designated as Fort Polk, in honor of General James H. Polk.

[3] See *United States v. Winckelmann*, 70 M.J. 403, 408 n.6 (C.A.A.F. 2011) ("'Grooming'" behavior refers to the "'sexualization of the relationship'" over time through repeated contact and attempts to gain affection in preparation for sexual activity." (quoting *United States v. Brand*, 467 F.3d 176, 203 (2d Cir. 2006)).

[4] Dismissed without prejudice, but to ripen into prejudice upon the completion of appellate review.

that he had time to discuss the agreement with his counsel, that he entered into the agreement of his own free will, that he understood all terms of the agreement, and that he pleaded guilty because he hoped to receive a lighter sentence[5] and because he was in fact guilty. The only provision of the plea agreement that referenced appellant's right to call witnesses and present evidence—under which appellant agreed not to request, at government expense, any witness located more than 50 miles from Fort Johnson—stated, "[t]his provision does not interfere with [appellant's] ability to present an effective case in extenuation and mitigation." Neither appellant nor the prosecution presented evidence or argument during the presentencing proceedings. The military judge inquired of appellant, "you did not testify or provide an unsworn statement during the sentencing phase of the trial. Was that your personal decision not to testify or provide an unsworn statement?" to which the appellant affirmed. The military judge did not close the court for deliberation, noting the specified sentence in the plea agreement, and sentenced appellant as required. The military judge did not recommend any clemency. Appellant directed his defense counsel to not file any post-trial matters in his case.

Now, for the first time on appeal, appellant asserts the mandated specified sentence provision of the plea agreement, which he submitted to the convening authority and bargained for, was an impermissible term. Appellant argues that while Executive Order 14,103, 88 Fed. Reg. 50, 537 (July 28, 2023) [Exec. Order 14,103], explicitly permits specified sentences, Exec. Order 14,103 was not in place at the time of his alleged misconduct. Additionally, appellant asserts that "proceedings" commenced in his case prior to Exec. Order 14,103, when the Article 30a, UCMJ, pre-referral warrant proceeding also took place in his case before the order went into effect.[6] Separately, appellant contends that his sentencing proceedings were an

---

[5] The military judge informed appellant, that based on the charges he was pleading guilty to, his maximum punishment was a dishonorable discharge, 160 years of confinement, total forfeiture of all pay and allowances, and reduction to E-1.

[6] Executive Order 14,103 specifically provides:

> The amendments in Annex 1 shall take effect on the date of this order, subject to the following: (a) Nothing in Annex 1 shall be construed to make punishable any act committed or omitted prior to the date of this order that was not punishable when committed or omitted. (b) Nothing in Annex 1 shall be construed to invalidate any nonjudicial punishment proceeding, restraint, preliminary hearing, referral of charges, trial in which arraignment occurred, or other action begun prior to the date of this order, and any

(continued....)

3

"empty ritual" where no additional presentencing evidence was presented by either party[7] and the military judge had no discretion.

## LAW AND DISCUSSION

The interpretation of provisions of the Rules for Courts-Martial [R.C.M.] and whether a term in a plea agreement violates the rules are questions of law that this court reviews de novo. *United States v. Hunter*, 65 M.J. 399, 401 (C.A.A.F. 2008) (citing *United States v. Tate*, 64 M.J. 269, 271 (C.A.A.F. 2007)). However, in order to receive relief for an impermissible term, an appellant must make a prima facie showing that he is entitled to such relief. *United States v. McLaughlin*, 50 M.J. 217, 219 (C.A.A.F. 1999).

*A. A Plea Agreement's Specified Sentence Does Not Violate the Plain Language of R.C.M. 705 and Article 53a, UCMJ*

Appellant's first assignment of error focuses on the fact that appellant's misconduct—and an Article 30a proceeding—took place before the 28 July 2023 effective date of Exec. Order 14,103, which added R.C.M. 705(d)(1)(D)—a provision explicitly permitting specified sentences—to the Manual for Courts-Martial. Based on the explicit allowance of specified sentences under the newly amended R.C.M. 705, appellant contends this court should presume the law under R.C.M. 705 and its controlling statute, Article 53a(a)(1)(B), UCMJ,[8] previously did not permit specified sentences.[9] However, we note that Appendix 15 of the 2024 Manual for Courts-Martial provides that Exec. Order No. 14,103 added R.C.M.

---

( . . . continued)
> such nonjudicial punishment proceeding, restraint, preliminary hearing, referral of charges, trial in which arraignment occurred, or other action may proceed in the manner and with the same effect as if the Annex 1 amendments had not been prescribed.

[7] Prosecution Exhibit 1, the stipulation of fact, had been previously admitted as evidence and was available for use at sentencing, as were appellant's statements made during his *Care* inquiry.

[8] The convening authority and the accused may enter into a plea agreement with respect to such matters as "limitations on the sentence that may be adjudged for one or more charges and specifications."

[9] In support of this point, appellant directs us to *Stone v. Immigr. & Naturalization Serv.*, 514 U.S. 386, 397 (1995) (the court "presumes [Congress/the President] intends its amendment to have a real and substantial effect.").

4

705(d)(1)(D) to "*clarify* that a plea agreement may include a specified sentence or portion of a sentence that shall be imposed by the court-martial." (emphasis added). Nonetheless, appellant argues that in the pre-amended R.C.M. 705, the term "limitations" did not empower the parties to agree to a specified sentence. We disagree.

We agree that when the President amends the rules, we must presume the President intended the amendment "to have real and substantial effect." *United States v. Csiti*, ___M.J.___, 2025 CAAF LEXIS 349, at *9 (C.A.A.F. 8 May 2025) (quoting *Stone*, 514 U.S. at 397). Here, the President's "substantial effect" was to provide clarity and uniformity. Although this court has not directly addressed this issue, the Secretary of the Army provided guidance in Army Regulation 27-10 [AR 27-10], which predated the issuance of the executive order, and stated, "a plea agreement pursuant to RCM 705(d)(2) may include an agreement for a *specific sentence* provided that the agreement . . . [does not] deprive an accused of complete sentencing proceedings." Army Reg. 27-10, Legal Services: Military Justice, para. 5-28(b)-(c) (20 Nov. 2020).[10] Further, the Navy-Marine Corps Court of Criminal Appeals has interpreted the pre-Exec. Order 14,103 version of R.C.M. 705 to allow specified sentencing. *United States v. Avellaneda*, 84 M.J. 656. 660 n.15 (N.M Ct. Crim. App. 2024) (citing *United States v. Rivero*, 82 M.J. 629, 632 (N.M Ct. Crim. App. 2022)).

Even though appellant's misconduct pre-dated the amendment to R.C.M. 705, Exec. Order 14,103 was effective on the dates of its issuance and appellant properly negotiated for a specified sentence after that date. As the government notes, the change did not "deprive appellant of a defense or disadvantage him in any way. Rather, it provided him with the option of negotiating a specific sentence . . . ."

Even if this term was impermissible, under our superior court's decision in *United States v. Davis*, 50 M.J. 426 (C.A.A.F. 1999), appellant is not entitled to relief. In *Davis*, the Court of Appeals for the Armed Forces [CAAF] found appellant's pretrial agreement contained a prohibited term but that appellant was not entitled to relief where the military judge properly advised appellant of the rights he was forgoing[11] and appellant freely agreed to the terms of the pretrial agreement. *Id.*

---

[10] Paragraph 5-27(b) of AR 27-10 further specifies that "[t]he convening authority *may not* enter into an agreement specifying a . . . specific sentence," but only in cases "*in which all charged offenses occurred prior to 1 January 2019.*" (first emphasis added). The fact that this restriction previously existed, but was removed, further counter's appellant's position that a specified provision was contrary to the Rules at the time he entered his plea.

[11] Namely, that his stipulation of fact would relieve the prosecution of its burden to prove the matters contained therein.

at 428-30. Further, our superior court reasoned that "[t]he remedy for an illegal pretrial agreement is to declare its provisions unenforceable. Thus, the remedy in this case would be to allow appellant to present evidence in his defense, but he has proffered none." *Id.* at 430-31. In conclusion, the CAAF found:

> Finally, there is no evidence that the pretrial agreement or confessional stipulation is the product of government overreaching. Appellant repeatedly assured the military judge that his actions were completely voluntary and were taken after receiving the advice of his defense counsel, whose competence is not disputed. Thus, we conclude that appellant has not been prejudiced by the procedures employed in this case. While we do not condone or encourage them, we are satisfied that no relief is warranted.

*Id.* at 431.

In addressing *Davis*, appellant dismisses the majority of the CAAF's reasoning by asserting that the CAAF hinged its decision solely on the fact that the appellant in *Davis* "had no defense to raise." However, affording meaning to the principles of primacy and recency, the CAAF in *Davis* seemed instead to hinge its decision on the lack of prejudice to appellant in determining no relief was warranted. *Id.* Similarly, in *United States v. McLaughlin*, the CAAF determined appellant was not entitled to relief, despite an unenforceable term in his pretrial agreement waiving speedy trial, because appellant did not "in the first instance come forward and make a *prima facie* showing or a colorable claim that he [was] entitled to relief." 50 M.J. at 219; *see also United States v. Forester*, 48 M.J. 1, 4 (C.A.A.F. 1998) (finding appellant not entitled to relief of overly broad pretrial agreement provision because "he has not shown that he was prejudiced by the inclusion of this provision.").

Appellant further contends he is entitled to relief because he could have presented evidence in mitigation during pre-sentencing. Seemingly, this argument falls flat. The provision in question did not prohibit appellant from presenting evidence in extenuation and mitigation under R.C.M. 1001(d). Regardless of any presentencing case, an appellant can always bargain for a sentence (or sentence range) beyond the sentence a military judge would otherwise impose.

## B. The Appellant Was Not Deprived of a Complete Sentencing Proceeding Contrary to Public Policy

Appellant's second assignment of error is even if the term for a specific sentence did not violate R.C.M. 705 and Article 53a, UCMJ, it nevertheless deprived

appellant of the right to a complete sentencing proceeding contrary to public policy. Appellant asserts:

> [t]here are two general categories of terms that are unenforceable: prohibited terms as defined by R.C.M. 705(c)(1), and terms that are against public policy. R.C.M. 705(e)(1) ("Either [side] may propose any term or condition that is not prohibited by law or public policy"); *see also Edwards*, 58 M.J. at 52; *United States v. Clark*, 53 M.J. 280, 283 (C.A.A.F. 2000).

Using this legal background, appellant proposes the "principle" that "plea agreement provisions are contrary to 'public policy' if they interfere with court-martial fact-finding, sentencing, or review functions or undermine public confidence in the integrity and fairness of the disciplinary process." Applying this principle, appellant contends that a specified plea undercuts public policy because it 1) deprives appellant of "the right to a complete presentencing proceeding," 2) deprives appellant of the right to "the complete and effective exercise of post-trial and appellate rights," and 3) would cause a "reasonable member of the public to question the fairness and integrity of the military justice system . . . ."

Given that federal civilian courts have long permitted specified sentences and that the UCMJ now explicitly permits them, the assertion that specified sentences are against "public policy" seems peculiar. *See* Fed. R. Crim. P. 11; *see also* R.C.M. 705(d)(1)(D). From a practical perspective: 1) appellant was not required to negotiate for a specified sentence; 2) there is no indication appellant's specified sentence was higher than the minimum sentence the government would have demanded were the pretrial agreement to have included a sentence range; 3) the military judge did not reject the appellant's plea agreement;[12] 4) appellant waived his sentencing case when he failed to put on presentencing evidence and specifically directed his defense counsel not to submit post-trial matters; and 5) this court's sentence appropriateness review under the provisions of Art. 66 is still available to the appellant as we may act on the sentence as entered into the record.[13]

---

[12] Article 53a(b), UCMJ, provides, in relevant part, that a military judge of a general court-martial "shall reject a plea agreement that [. . .] is prohibited by law; or is contrary to, or is inconsistent with, a regulation prescribed by the President with respect to terms, conditions, or other aspects of plea agreements." *See also* R.C.M. 910(f). Nothing in this opinion should be construed as constraining a military judge's authority to reject a plea under Article 53a and R.C.M. 910(f).

[13] We have considered the appellant's assignment of error regarding sentence appropriateness and find it without merit.

Appellant freely and voluntarily entered into the agreement because he was guilty and wanted the benefit of the deal, which included limiting his punitive exposure and dismissing a charge of attempted sexual assault of a child.

## CONCLUSION

On consideration of the entire record, the findings of guilty and the sentence are AFFIRMED.

Senior Judge POND and Judge MORRIS concur.

JAMES W. HERRING, JR.
Clerk of Court